# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND
### Greenbelt Division

| | | |
|---|---|---|
| JEUNG H KWON | ) | |
| HUI KWON | ) | CASE NO. 8:11-CV-2390 |
| | ) | |
| Plaintiffs, | ) | COMPLAINT |
| | ) | |
| v. | ) | |
| | ) | JURY TRIAL DEMANDED |
| ANTONIO HUGHES, | ) | |
| NATIONAL CREDIT SYSTEMS, INC. | ) | |
| | ) | |
| Defendants | ) | |

## COMPLAINT FOR DAMAGES FOR VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

### JURISDICTION

1.      Jurisdiction of this Court arises under 28 U.S.C. § 1331 and pursuant to 15 U.S.C. § 1692k(d), and pursuant to 28 U.S.C. § 1367 for pendent state law claims.

2.      This action arises out of Defendants' repeated violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA") and out of the invasions of Plaintiffs's personal and financial privacy by these Defendants and their agents in their illegal efforts to collect a consumer debt from Plaintiffs.

3.      Venue is proper in this District because the acts and transactions occurred here, Plaintiffs resides here, and Defendants transact business here

### PARTIES

4.      Plaintiffs Jeung H. Kwon and Hui Kwon are natural persons who resides in the City of Bethesda, County of Montgomery, State of Maryland, and are "consumers" as that term is defined by 15 U.S.C. § 1692a(3) and are persons affected by a violation of the FDCPA with standing to bring this claim under 15 U.S.C. §§ 1692k(a).

5.      Defendant National Credit Systems, Inc. (hereinafter "Defendant NCS") is a collection agency whose principal place of business is located at 3750 Naturally Fresh Blvd., Atlanta, GA, 30349, and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

6.      Defendant Antonio Hughes (hereinafter "Defendant Hughes") is a natural person who was employed at all times relevant herein by Defendant NCS as a collection agent and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

**FACTUAL ALLEGATIONS**

7.      On or about February 6, 2010, Plaintiffs signed a 12 month lease with the Gardens of Valley Ranch Apartment Complex in Irving, Texas.

8.      Due to a change in their employment, Plaintiffs needed to move to Maryland.

9.      In November 2010, Plaintiffs contacted the property management company to let them know that they were moving out.

10.     Concurrently, Plaintiffs contacted the electricity and water companies and had them disconnected so they wouldn't have to pay for items they would not be using.

11.     After Plaintiffs moved out in November, Plaintiffs continued to pay their monthly rent until their lease expired in February 2011.

12.     At some time thereafter, the property management company contracted Defendant NCS to collect for alleged past due utilities and for the replacement of a refrigerator caused by mold damage.

13.     This alleged obligation was primarily for personal, family or household purposes and is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5)

14.     By virtue of this debt, Plaintiffs are consumers as defined by 15 U.S.C. § 1692a(3);

*April 5, 2011*

15.     On or about April 5, 2011, Defendant NCS's collector Defendant Hughes sent two collection letters, individually addressed to Plaintiffs requesting that they settle a past due balance of $806.93 owed to Gardens of Valley Ranch.

*April 5, 2011 @ 10:17 AM*

16.     On this date and time Defendant Hughes attempted to contact Plaintiffs on their cellular phone regarding a debt.

17.     Defendant Hughes left a voicemail which asked Plaintiffs to return his call.

*April 5, 2011 @ 10:37 AM*

18.     20 minutes after his first call, Defendant Hughes again attempted to contact Plaintiffs on their cellular phone regarding a debt.

19.     Defendant Hughes left a voicemail which asked Plaintiffs to return his call.

*April 5, 2011 @ 10:38 AM*

20.     Plaintiffs returned Defendant Hughes phone call to see what debt he was referring to.

21. Defendant Hughes explained that he was collecting on past due fees that had been assessed by the condo association.

22. Plaintiffs stated that they had been regularly paying their rent even though they had moved in November of 2010.

23. Defendant Hughes explained that there was an outstanding balance that been sent to his employer Defendant NCS for collections.

24. Plaintiffs stated to Defendant Hughes that they did not owe this debt.

*April 11, 2011*

25. On April 11, 2011, the property management company mailed an invoice to Plaintiffs notifying them that they owed $806.93 for past due utilities and for replacement of refrigerator caused by mold damage.

26. Around this time, Plaintiff called the property management company and asked for photographic proof of the damage to the refrigerator.

27. Kelly, the representative she spoke to, promised to send the pictures but never did.

*April 13, 2011 @ 9:57 AM*

28. On this date and time, Plaintiffs called Defendant Hughes.

29. Defendant Hughes began interrogating Plaintiffs about the money that they owed to Garden of Valley Ranch.

30. Plaintiffs explained that they didn't have the money at that moment.

31. Defendant Hughes told Plaintiffs that if they didn't pay, he would be notifying the credit reporting agencies and this would ruin their credit score.

32. Defendant Hughes also threatened to sue Plaintiffs if they did not pay.

*April 14, 2011*

33. On or about April 14, 2011, Defendant NCS's collector Defendant Hughes sent a collection letter, addressed to Mr. Kwon requesting that he settle the past due balance of $806.93 owed to Gardens of Valley Ranch.

*April 25, 2011 @ 10:16 AM*

34. On this date and time, Defendant Hughes attempted to contact Plaintiffs on their cellular phone regarding a debt.

35. Defendant Hughes left a voicemail which asked Plaintiffs to return his call.

Complaint- 3

*April 25, 2011 @ 10:30 AM*

36.     On this date and time, Plaintiffs returned Defendant Hughes phone call

37.     Defendant Hughes explained that if Plaintiffs did not make a payment that their credit score would be ruined.

38.     Defendant Hughes again threatened Plaintiffs with a lawsuit if nonpayment continued.

*May 2, 2011 @ 3:14 PM*

39.     On April 5, 2011, Defendant NCS's collector, Defendant Hughes attempted to contact Plaintiffs on their cellular phone regarding a debt.

40.     Defendant Hughes left a voicemail which asked Plaintiffs to return his call.

*May 5, 2011 @ 1:02 PM*

41.     On this date and time, Plaintiffs returned Defendant Hughes phone call regarding the debt.

42.     Defendant Hughes demanded that Plaintiffs make payment as soon as possible, and stated that payment plans were available.

43.     Plaintiffs stated that they could mail two checks to Defendant Hughes.

44.     Defendant Hughes suggested that Plaintiffs instead give him their checking account number so that he could directly withdraw the money.

45.     Plaintiffs did not feel comfortable with this suggestion and told Defendant Hughes that they would just mail the two checks.

46.     Defendant Hughes became very angry and began berating the Plaintiffs about their method of payment.

47.     Defendant Hughes said that Plaintiffs could not just choose to do things the they wanted, but had to do things the way he required.

48.     Plaintiffs reiterated that they did not want to disclose their checking account information.

49.     Defendant Hughes once again threatened Plaintiffs with a lawsuit if he did not receive the payment within a certain time period.

*May 14, 2011 @ 9:44 AM*

50.     Defendant NCS's collector, Defendant Hughes attempted to contact Plaintiffs on their cellular phone regarding a debt.

51.     Defendant Hughes left a voicemail which asked Plaintiffs to return his call.

*May 18, 2011 @ 1:44 PM*

52.     Defendant NCS's collector, Defendant Hughes attempted to contact Plaintiffs on their cellular phone regarding a debt.

53.     Defendant Hughes left a voicemail which asked Plaintiffs to return his call.

<u>May 20, 2011</u>

54.     On or about May 20, 2011, Defendant NCS's collector Defendant Hughes sent a collection letter, addressed to Mr. Kwon with the threat that they would be reporting the delinquency to the credit reporting bureaus and that this would negatively impact his credit score.

55.     He stated that it was not too late to settle the past due balance of $806.93 owed to Gardens of Valley Ranch.

<u>June 27, 2011</u>

56.     On or about June 27, 2011, Defendant Hughes called Plaintiffs regarding the debt.

57.     Plaintiffs replied that they were represented by undersigned counsel and that he would be contacting Defendant Hughes.

58.     Defendant Hughes was surprised by this development.

<u>July 8, 2011 @ 4:21pm</u>

59.     Defendant Hughes called Plaintiffs on their cellular phone and stated to Plaintiff that he thought they had an attorney.

60.     Defendant Hughes told Plaintiff that he had not heard from her attorneys and that this was evidence that he couldn't do anything for her regarding this debt.

61.     At no point did Plaintiff's counsel receive any contact from Defendant Hughes or another employee of Defendant NCS

<u>August 12, 2011</u>

62.     On or about August 12, 2011, Defendant NCS's collector, Defendant Hughes contacted Plaintiffs on their cellular phone regarding this debt.

63.     Defendant Hughes asked Plaintiff Mrs. Kwon why she hadn't paid yet, and she told Defendant Hughes that he needed to speak to her attorney and attempted to give him the contact information.

64.     Defendant Hughes told her that he didn't want the information and that her attorney couldn't do anything for her.

Complaint- 5

65.     Defendant Hughes told Mrs. Kwon that she needed to pay by 4 o' clock that afternoon.

66.     Mrs. Kwon told Defendant Hughes she would not pay and reiterated that he needed to talk to her attorney.

67.     Defendant Hughes once again told Mrs. Kwon that her attorney couldn't do anything for her and that he had the power to ruin her credit.

68.     On various occasions, Defendant Hughes would play a recording with what appeared to be testimonials from people who did not pay their bills.

69.     The people on these recordings would say that because they refused to pay, their credit was now ruined.

70.     All of the above-described collection communications made to Plaintiffs by Defendant Hughes and, were made in violation of numerous and multiple provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692c(b), 1692d, 1692d(2), 1692d(3), 1692d(5), 1692e, 1692e(2), 1692e(5), 1692e(7), 1692e(8), 1692e(10) and 1692f, 1692f(1) amongst others.

## LEGAL APPLICATION

71.     All of the above-described collection communications made to Plaintiffs by Defendant Hughes and other collection employees employed by Defendant NCS, were made in violation of numerous and multiple provisions of the FDCPA, including but not limited to all of the provisions of the FDCPA cited herein.

72.     The above-detailed pattern of conduct by these Defendants of harassing Plaintiffs in an effort to collect a debt were violations of numerous and multiple provisions of the FDCPA, including but not limited to all of the above mentioned provisions of the FDCPA.

73.     Defendants' illegal abusive collection communications as more fully described above were the direct and proximate cause of severe emotional distress on the part of the Plaintiffs and caused them unnecessary personal strain in their marital relationship.

74.     Due to these series of abusive collection calls by Defendant NCS and its employee, Plaintiffs have suffered actual damages as a result of these illegal collection communications by these Defendants in the form of anger, anxiety, emotional distress, frustration, humiliation, embarrassment, amongst other negative emotions, as well as suffering from unjustified and abusive invasions of personal privacy.

*Respondeat Superior Liability*

75.     The acts and omissions of Defendant Hughes who communicated with Plaintiffs as more further described herein, were committed within the time and space limits of the former's agency relationship with his principal, Defendant NCS.

76.     The acts and omissions by Defendant Hughes were incidental to, or of the same general nature as, the responsibilities these agents were authorized to perform by Defendant NCS in collecting consumer debts.

77.     By committing these acts and omissions against Plaintiffs, Defendant Hughes was motivated to benefit his principal, Defendant NCS.

78.     Defendant NCS is therefore liable to Plaintiffs through the Doctrine of Respondeat Superior for the intentional and negligent acts, errors, and omissions done in violation of state and federal law by its collection employees, including but not limited to violations of the FDCPA, in their attempts to collect this debt from Plaintiffs.

**COUNT I. VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT**
**15 U.S.C. § 1692 et seq.**

79.     Plaintiffs incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

80.     This Court in *Awah v. Donaty*, 2009 U.S. Dist. LEXIS 103077 (D. Md. Nov. 4, 2009) stated that in order for Plaintiffs to make a successful claim under the FDCPA, he/she must show that

(1) The Plaintiffs has been the object of collection activity arising from consumer debt;

(2) The defendant is a debtor collector as defined by the FDCPA; and

(3) The defendant has engaged in an act or omission prohibited by the FDCPA.

81.     Here, all elements are present, satisfied, and cannot be disputed.

82.     Through Defendant's actions the Plaintiffs has been severely agitated, annoyed, traumatized, and emotionally damaged by the actions of the Defendant.

83.     As a result of Defendant's violations of the FDCPA, Plaintiffs are entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3), from each Defendant herein.

**WHEREFORE**, Plaintiffs prays that judgment be entered against each Defendant:

- For an award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1) against the Defendant and for Plaintiffs;
- For an award of statutory damages of $1,000.00 pursuant to 15 U.S.C. §1692k(a)(2)(A) against the Defendant and for Plaintiffs;
- For an award of costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3) against the Defendant and for Plaintiffs; and
- For such other and further relief as this Court deems just and proper.

**COUNT II. INVASION OF PRIVACY BY INTRUSION UPON SECLUSION**

84.      Plaintiffs incorporate by reference all of the paragraphs of this Complaint as though fully stated herein.

85.      Congress explicitly recognized a consumer's inherent right to privacy in collection matters in passing the Fair Debt Collection Practices Act, when it stated as part of its findings:

> **Abusive debt collection practices** contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to **invasions of individual privacy**.

*15 U.S.C. § 1692(a) (emphasis added).*

86.      Congress further recognized a consumer's right to privacy in financial data in passing the Gramm Leech Bliley Act, which regulates the privacy of consumer financial data for a broad range of "financial institutions" including debt collectors, albeit without a private right of action, when it stated as part of its purposes:

> It is the policy of the Congress **that each financial institution has an affirmative and continuing obligation to respect the privacy of its customers** and to protect the security and confidentiality of those customers' nonpublic personal information.

*15 U.S.C. § 6801(a) (emphasis added).*

87.      Defendant and its agents intentionally and/or negligently interfered, physically or otherwise, with the solitude, seclusion and or private concerns or affairs of Plaintiffs, namely, by repeatedly and unlawfully attempting to collect a debt that he apparently did not owe and thereby invaded Plaintiffs's privacy.

88.      Defendant and its agents intentionally and/or negligently caused emotional harm to Plaintiffs by engaging in highly offensive conduct in the course of collecting this debt, thereby invading and intruding upon Plaintiffs' rights to privacy.

89.      Plaintiffs had a reasonable expectation of privacy in his solitude, seclusion, private concerns or affairs, and private financial information.

90.      The conduct of this Defendant, in engaging in the above-described illegal collection conduct against Plaintiffs, resulted in multiple intrusions and invasions of privacy by this Defendant which occurred in a way that would be highly offensive to a reasonable person in that position.

91.      As a result of such intrusions and invasions of privacy, Plaintiffs is entitled to actual damages in an amount to be determined at trial from this Defendant.

**WHEREFORE**, Plaintiffs prays that judgment be entered against the Defendant:

- For an award of actual damages from Defendant for the emotional distress suffered as a result of the FDCPA violations and invasions of privacy in an amount to be determined at trial and for Plaintiffs;
- For an award of reasonable attorney's fees and costs; and
- For such other and further relief as this Court deems just and proper.

### TRIAL BY JURY

92.     Plaintiffs are entitled to and hereby respectfully demand a trial by jury on all issues so triable.  US Const. amend. 7.  Fed.R.Civ.P. 38.

Respectfully submitted this <sup>th</sup> day of August, 2011,

JEUNG KWON

HUI KWON

By:
**/s/ Robinson S. Rowe**
Robinson S. Rowe, Bar No. 27752
Attorney for the Plaintiffs
Rowe Barnett, PLLC
5906 Hubbard Dr., Suite 4-A
Rockville, MD 20852
TEL: 301-770-4710 / FAX: 301-770-4711
rrowe@rowepllc.com